Commonwealth *v.* Martin.

COMMONWEALTH *VS.* JAMAL MARTIN.

Suffolk. November 5, 2009. - May 27, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Firearms. Practice, Criminal,* Motion to suppress. *Constitutional Law,* Stop and frisk, Reasonable suspicion. *Search and Seizure,* Protective frisk, Reasonable suspicion.

A Boston Municipal Court judge erred in denying a criminal defendant's pretrial motion to suppress a loaded firearm discovered on the defendant's person by a police officer during a patfrisk that took place when, following a consensual encounter between the officer and the defendant on a sidewalk, the defendant pushed the officer's hands away as he attempted to begin the patfrisk, where the defendant did not appear to be engaged in criminal activity, let alone likely to lash out with a weapon [18-22]; moreover, the defendant's act of pushing the officer's hands away when he initially attempted the patfrisk did not constitute a new, intervening crime that dissipated any causal link between the officer's conduct and the discovery of the firearm, such that the exclusionary rule did not apply, where nothing in the record suggested that the officer based his renewed attempt to patfrisk on the defendant's assault, and where, by the same reasoning, the renewed patfrisk was not an arrest for assault and battery on a police officer [22-23].

COMPLAINT received and sworn to in the Dorchester Division of the Boston Municipal Court Department on October 10, 2006.

After transfer to the Central Division of the Boston Municipal Court Department, a pretrial motion to suppress evidence was heard by *R. Peter Anderson,* J., and the case was heard by *Eleanor C. Sinnott,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Wendy H. Sibbison* (*Pamela S. Segre* with her) for the defendant.

*Kathleen Celio,* Assistant District Attorney, for the Commonwealth.

*Brownlow M. Speer,* Committee for Public Counsel Services, & *James F. Tierney,* for Committee for Public Counsel Services, amicus curiae, submitted a brief.

*John Reinstein, Charles Ogletree, Robert J. Smith, Harry T. Daniels, & Kevin S. Prussia,* for American Civil Liberties Union of Massachusetts & another, amici curiae, submitted a brief.

CORDY, J. After a jury-waived trial in the Central Division of the Boston Municipal Court Department, the defendant, Jamal Martin, was convicted of carrying a firearm without a license, in violation of G. L. c. 269, § 10 (*a*); carrying a loaded firearm, in violation of G. L. c. 269, § 10 (*n*); and assault and battery on a police officer, in violation of G. L. c. 265, § 13D.[1] He appealed from the denial of his pretrial motion to suppress evidence and statements, claiming that he was subjected to an unlawful patfrisk violative of the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights.[2] See *Commonwealth* v. *Martin,* 73 Mass. App. Ct. 526, 527 (2009). In addition, he challenged his convictions, asserting that the trial judge[3] erred in admitting ballistics certificates and excluding exculpatory evidence to rebut them. *Id.* A divided panel of the Appeals Court rejected his arguments and affirmed his convictions. *Id.* at 538. We granted the defendant's application for further appellate review. For the reasons that follow, we vacate the order denying the defendant's motion to suppress. In view of our conclusion, we need not consider the defendant's arguments pertaining to the purported errors at trial.

*Background.*[4] We summarize the motion judge's findings of fact, with minor supplementation from uncontested testimony, noting that all of his findings are supported by the evidence he found credible.[5] Consequently, we accept them. See *Commonwealth* v. *Sparks,* 433 Mass. 654, 656 (2001), and cases

---

[1]The conviction of assault and battery on a police officer was placed on file with the defendant's consent, and is not before us. See *Commonwealth* v. *Delgado,* 367 Mass. 432, 438 (1975). A charge of possession of ammunition without a firearms identification card, in violation of G. L. c. 269, § 10 (*h*), was dismissed in response to the Commonwealth's request prior to trial.

[2]The defendant did not argue that art. 14 of the Massachusetts Declaration of Rights affords him any greater protection than the Fourth Amendment to the United States Constitution.

[3]The trial judge was not the motion judge.

[4]We confine our discussion of the background of the case to the facts and issues presented by the defendant's motion to suppress.

[5]The only witness to testify at the evidentiary hearing on the motion to suppress was Boston police Officer Ismael Henriquez.

cited. On October 8, 2006, at approximately 10:30 A.M., Boston police Officer Ismael Henriquez and his partner were patrolling the Woodrow Avenue area of the Dorchester section of Boston. Officer Henriquez considered the area a "high crime" area, explaining that he had previously participated in arrests for drugs and had knowledge of "numerous shootings" in the area. The officers, who were dressed in plain clothes and were driving in an unmarked vehicle, were looking for a particular juvenile who lived in the neighborhood so they could execute a warrant for his arrest.

While driving, the officers observed a young man, the defendant, wearing a sweatshirt with the hood up around his face. The defendant was walking on Wollaston Terrace toward Woodrow Avenue in the opposite direction from which the police were traveling. The officers could not see the defendant's face, but thought he might be the youth for whom they were looking.

The officers turned around and drove alongside the defendant, who ignored them and continued walking with his head down. The officers rolled down a window, identified themselves as police officers, and asked the defendant his name. After some hesitation, the defendant responded, "Jamal Daly." This name was not the name of the juvenile for whom they were looking, and the defendant was taller and stockier than that juvenile. The officers asked the defendant for his date of birth; he replied, "September, 1987." When they asked him for his age, he stated, "Seventeen."[6] Because the officers believed the defendant was lying about either his birth date or age, Officer Henriquez alighted from the vehicle and approached the defendant. Officer Henriquez's partner remained inside the vehicle. The defendant was nervous and took a few steps back. Officer Henriquez was able to see the defendant's face and knew he was not the juvenile for whom they had been looking.

Officer Henriquez asked the defendant if he had any weapons. When Officer Henriquez received no answer, he attempted to pat frisk the defendant, informing him that "for safety," he was going to conduct a patfrisk. The defendant pushed the officer's hands away, and stated, "You can't touch me." Officer Henriquez told the defendant to "calm down" and proceeded with

---

[6]If the defendant had been born in September, 1987, he would have been nineteen years of age, not seventeen years of age.

the patfrisk, which revealed a loaded gun. The defendant was then placed in handcuffs and asked if he had a license to carry the firearm. He stated that he did not. The defendant was arrested and brought to a police station.

During the defendant's booking, he was allowed to make a telephone call. Officer Henriquez overheard the defendant say that he had "just got locked up for the gun he had found." The officers then learned that there was an outstanding warrant for the defendant's arrest. He was eventually charged for his possession of the firearm and for assault and battery on a police officer, the latter charge based on his brushing away of Officer Henriquez's hands.

The motion judge first acknowledged that, prior to the defendant's pushing Officer Henriquez's hands away at the time of the initial attempted patfrisk, there was no constitutional basis to search the defendant. However, he reasoned that the defendant's actions of pushing Officer Henriquez's hands away "provided probable cause to arrest the defendant for the crime of assault and battery." Because probable cause to arrest existed, the judge determined that Officer Henriquez was permitted to search the defendant for weapons. The motion judge relied on the principles that the search may precede the formal arrest, *Commonwealth* v. *Johnson*, 413 Mass. 598, 602 (1992), and what constitutes an arrest is based on objective circumstances, *Commonwealth* v. *Avery*, 365 Mass. 59, 65 (1974). He also noted, "If suspects were legally permitted to resist searches or arrests they believed illegal, chaos and violence would supplant the rule of law." Based on these principles, the motion judge concluded that the officer's search and seizure of the defendant "objectively was an arrest and the seizure of the firearm [was] constitutional."

By a divided panel, the Appeals Court affirmed the motion judge's ruling, but on different grounds. *Commonwealth* v. *Martin*, 73 Mass. App. Ct. 526, 529 (2009). The Appeals Court initially determined that the seizure of the defendant did not take place until Officer Henriquez decided to pat frisk him. *Id.* at 531-532. Relying on *Commonwealth* v. *Fraser*, 410 Mass. 541 (1991) (*Fraser*), the Appeals Court concluded that the patfrisk was lawful, reasoning that Officer Henriquez had a

legitimate reason for being in the immediate proximity of the defendant, see *Fraser, supra* at 544-545 & n.4, and had a reasonable belief that the defendant was armed and dangerous, see *id.* at 544, citing *Terry* v. *Ohio,* 392 U.S. 1, 27 (1968) (*Terry*). With respect to its latter conclusions, the Appeals Court acknowledged that it was a "close question," but held that the combination of four factors provided a sufficient basis for the officer's belief that the defendant posed a danger to him. *Commonwealth* v. *Martin, supra* at 533. The four factors were as follows: (1) the area was considered to be a high crime area; (2) the defendant's conduct of initial hesitation and nervousness; (3) the defendant lied about when he was born or his age; and (4) the ambiguity created by the defendant's silence in response to Officer Henriquez's question concerning whether he had any weapons. *Id.* at 533-534. The dissent, however, did not find the combination of these factors to be persuasive, and reasoned that, "even under the teachings of [*Fraser* and its progeny], there simply was not enough here to question the defendant further after the police realized he was not the person they were looking for. This is a case where 'the police . . . turn[ed] a hunch into a reasonable suspicion by inducing the conduct justifying the suspicion.' " *Id.* at 538 (Brown, J., dissenting), quoting *Commonwealth* v. *Barros,* 435 Mass. 171, 178 (2001).

*Discussion.* While, absent clear error, we adopt the factual findings of the motion judge, we "independently determine the correctness of the judge's application of constitutional principles to the facts as found." *Commonwealth* v. *DePeiza,* 449 Mass. 367, 369 (2007), quoting *Commonwealth* v. *Catanzaro,* 441 Mass. 46, 50 (2004). "It is the Commonwealth's burden to demonstrate that the police officers' stop and frisk of the defendant was within constitutional limits." *Commonwealth* v. *DePeiza, supra.* For the reasons that follow, the Commonwealth did not meet its burden in this case.

We begin by identifying the moment the defendant was seized. See *id.* Here, we agree with the Appeals Court, *Commonwealth* v. *Martin, supra* at 530-532, that the defendant was seized when Officer Henriquez first attempted to pat frisk the defendant. See *Commonwealth* v. *DePeiza, supra* at 371 (defendant seized when police officers announced their intention to pat frisk him).

Up until that time, the officers were engaged in a consensual interaction with the defendant for which they required no constitutional justification.[7] See *Florida* v. *Bostick*, 501 U.S. 429, 434 (1991), quoting *Florida* v. *Royer*, 460 U.S. 491, 497 (1983) (plurality opinion) ("law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place"); *Commonwealth* v. *Lyles*, 453 Mass. 811, 814 (2009). However, the Appeals Court erred when it concluded that the seizure of the defendant was justified. See *Commonwealth* v. *Martin, supra* at 532.

The Appeals Court interpreted our decision in *Fraser* as holding that the only justification required for a police officer to escalate a consensual encounter with an individual to include a patfrisk is a reasonable belief that the individual is armed and dangerous. *Commonwealth* v. *Martin, supra* at 532-533. Today, in *Commonwealth* v. *Narcisse, ante* 1, 7-10 (2010), we acknowledge that *Fraser*'s holding could be interpreted in such a manner, but that proper fidelity to *Terry* requires additional constitutional justification.

When an individual is stopped and searched, the police conduct must satisfy two conditions. "First, the investigatory stop must be lawful. That requirement is met in an on-the-street encounter, *Terry* determined, when the police officer reasonably suspects that the person apprehended is committing or has committed a criminal offense. Second, to proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous." *Arizona* v. *Johnson*, 129 S. Ct. 781, 784 (2009). In *Fraser*, we noted that in "anomalous" circumstances, a patfrisk may be justified even when not "preceded by a forcible stop, the prototypical situation addressed in *Terry*." *Fraser, supra* at 544 n.4. In *Commonwealth* v. *Narcisse, supra*, we clarified that such circumstances do not permit an abandonment of *Terry*'s two-pronged analysis, even though the two prongs —

---

[7]Police officers may approach individuals and ask questions of them without having to justify the encounter. See *Florida* v. *Bostick*, 501 U.S. 429, 434 (1991); *Terry* v. *Ohio*, 392 U.S. 1, 32 (1968) (Harlan, J., concurring). However, the officers must have adequate constitutional justification to escalate such consensual encounters, that is, by seizing the person before them. *Id.* at 32-33 (Harlan, J., concurring).

the stop and the search — are merged into a single act. Accordingly, we held that a police officer may escalate a consensual encounter with an individual to include a patfrisk only if the officer has both a reasonable suspicion that the individual is engaged in criminal activity and is armed and dangerous. *Id.* at 9. However, we also held that both elements may be satisfied during a consensual encounter if the officer reasonably comes to believe that the individual has a weapon and appears inclined to use it. *Id.* at 9-10.

In this case, nothing the defendant said or did justified an escalation of the consensual encounter. The defendant did not appear to possess a weapon or make any gestures indicating that he may have been concealing one that he was inclined to use. Contrast *Commonwealth* v. *DePeiza, supra* at 371-372 (defendant's walk suggested that he was carrying concealed firearm). In addition, in contrast to the factors existing in the *Fraser* case, nothing about the circumstances supported a belief that the defendant might be armed or engaged in criminal activity; Officer Henriquez had no report involving the defendant, or any criminal or suspicious activity occurring in this particular location. Contrast *Fraser, supra* at 545 (police had received radio call describing man with gun). Although the defendant appeared nervous, he made no furtive gestures. Contrast *id.* (defendant bent down behind truck "as though to pick something up or put something down"). Although the defendant did not respond to Officer Henriquez's inquiry concerning weapons, he was under no obligation to do so, and his silence in response to the question, by itself, did not legitimately give rise to a reasonable fear for safety because his silence was not accompanied by circumstances or conduct that gave rise to a belief that he was inclined to act out violently. Contrast *id.* at 542-543, 545 & n.2 (defendant kept hands concealed in pockets after officer, who having received report of armed man, asked defendant to remove his hands from his pockets). That the encounter took place in a "high crime area," *id.* at 545, is properly considered a factor supportive of a belief that guns may be present, but with caution. See *Commonwealth* v. *Johnson,* 454 Mass. 159, 163 (2009). Such areas "are inhabited and frequented by many law-abiding citizens who are entitled to be protected against being stopped

and frisked just because of the neighborhood where they live, work, or visit." *Id.*, and cases cited. In the instant case, this factor cannot be considered persuasive. During his cross-examination at the motion hearing, Officer Henriquez acknowledged that the area was residential; the encounter, which involved a young man walking by himself, occurred in the morning; and most of the residents in the area are law-abiding citizens.

The Commonwealth contends, however, that the requisite suspicion existed for Officer Henriquez to have reasonably suspected that the defendant, on account of his age,[8] was unlawfully carrying a "firearm," and consequently was constitutionally permitted to seize and search him. Although "[a] police officer may make an investigatory stop 'where suspicious conduct gives the officer reasonable ground to suspect that a person is committing, has committed, or is about to commit a crime,' " *Commonwealth* v. *Gomes*, 453 Mass. 506, 510-511 (2009), quoting *Commonwealth* v. *Wilson*, 441 Mass. 390, 394 (2004), the facts here do not establish the requisite level of suspicion. As noted above, there was nothing in the defendant's appearance or mannerisms that suggested he had a firearm. Contrast *Commonwealth* v. *DePeiza, supra.* In addition, the defendant was not known to the officers as someone having previously been arrested for criminal activity. Contrast *Commonwealth* v. *Gomes, supra* at 511 (that defendant previously had been arrested on drug charges and was known to police was factor properly considered in justifying stop). That the defendant became nervous when questioned by Officer Henriquez does not add much to the equation, particularly in light of his young age. See *Commonwealth* v. *King*, 389 Mass. 233, 237, 243-244 (1983) (no reasonable suspicion of white man and black man sitting in parked automobile at rest stop in winter at 2 A.M., who became nervous when questioned by police). See also *United States* v. *McKoy*, 428 F.3d 38, 40 (1st Cir. 2005) ("Nervousness is a common and entirely natural reaction to police presence . . ."). Because it was within the defendant's right to ignore questions posed by the officers, his refusal to answer

---

[8]A license to carry a firearm only may be issued to persons twenty-one years of age or older. G. L. c. 140, § 131 (*d*) (iv). Thus, a minor's possession of a firearm "may be viewed as presumptively illegal." *Commonwealth* v. *Gunther G.*, 45 Mass. App. Ct. 116, 119 (1998).

Officer Henriquez's question concerning whether he had a weapon cannot provide reasonable suspicion for his seizure. See *Commonwealth v. Barros*, 435 Mass. 171, 178 (2001) (defendant had right to ignore officers and his activities of breaking eye contact with officers and refusing to answer questions did not establish reasonable suspicion).

In sum, the defendant did not appear to be engaged in criminal activity, let alone likely to lash out with a weapon. Neither prong of *Terry* having been satisfied, the simultaneous seizure and search of the defendant lacked adequate constitutional justification.

Last, we reject the Commonwealth's argument that the defendant's act of pushing Officer Henriquez's hands away when he initially attempted to pat frisk the defendant constituted a "new" intervening crime (of assault and battery on a police officer) which "dissipated any causal link between the officer's conduct and the discovery of the firearm," thereby rendering the exclusionary rule inapplicable. See *Commonwealth v. King, supra* at 245. Reflecting the Commonwealth's logic, the motion judge found that the defendant's conduct gave Officer Henriquez probable cause to arrest him and that the completed pat-frisk was, in fact, an arrest. We disagree with both positions.

It is true that the exclusionary rule will not insulate an individual from prosecution who, in response to or after being unlawfully seized, commits acts against the arresting officers that provide independent and sufficient grounds to arrest him. See *id.* However, the officers must act, at least in part, on the basis of the subsequent acts of the individual. Thus, in *Commonwealth v. Borges*, 395 Mass. 788, 797 (1985), we concluded that a defendant's attempted flight and subsequent struggle with police officers after being unlawfully seized were not sufficient "intervening acts" to dissipate the taint of the initial unlawful seizure. In that case, "[t]here [was] no indication . . . that the police officers undertook the [second seizure] with consideration of the defendant's intervening acts; only one crime, possession of heroin [for which the defendant was initially seized], motivated the officers' actions throughout the incident." *Id.* The same is true in this case. There is nothing in the record to suggest that Officer Henriquez based his renewed attempt to pat frisk on the defendant's assault. To the contrary, Officer Henriquez simply told the defendant to

"calm down" and that he was going to pat frisk him to "make sure [he did not] have any weapons." Thus, whatever acts may have intervened, they did not influence the decision to seize the defendant, and accordingly the acts cannot have dissipated the taint of the original unlawful seizure.[9] By the same reasoning, the renewed patfrisk was not an arrest for assault and battery on a police officer.

*Conclusion.* The order denying the defendant's motion to suppress is vacated and an order shall be entered allowing that motion. The evidence obtained as a result of the illegal seizure must be excluded. *Commonwealth* v. *Cheek*, 413 Mass. 492, 497 (1992). The case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

[9]Had Officer Henriquez actually arrested the defendant for assault, the result in this case may have been different. An illegal seizure does not render the seized individual immune from arrest regardless of his postseizure conduct; we do not condone or protect acts that constitute crimes against police officers. See *Commonwealth* v. *Borges*, 395 Mass. 788, 795-796 (1985); *Commonwealth* v. *King*, 389 Mass. 233, 238, 245 (1983) (driver in vehicle drew gun and fired at officers three times); *Commonwealth* v. *Mock*, 54 Mass. App. Ct. 276, 284 (2002) (defendant's act of throwing video cassette recorder at police officer broke causal chain); *Commonwealth* v. *Holmes*, 34 Mass. App. Ct. 916, 917-918 (1993) (defendant's act of suddenly "slamm[ing] open" door of automobile against officer and knocking him to ground broke causal chain).