NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

14-P-1108                                          Appeals Court

COMMONWEALTH  vs.  MICHAEL UBILEZ.

No. 14-P-1108.

Middlesex.      October 7, 2015. - January 7, 2016.

Present:  Katzmann, Rubin, & Wolohojian, JJ.

Constitutional Law, Search and seizure, Probable cause. Search
    and Seizure, Motor vehicle, Probable cause, Search incident
    to lawful arrest, Inevitable discovery. Probable Cause.
    Motor Vehicle, Registration, Operation. Receiving Stolen
    Goods.

Complaint received and sworn to in the Woburn Division of
the District Court Department on January 8, 2010.

A pretrial motion to suppress evidence was heard by Paul M.
Yee, J., and the case was tried before Timothy H. Gailey, J.

J. Gregory Batten for the defendant.
David Bastian, Assistant District Attorney, for the
Commonwealth.

WOLOHOJIAN, J.  At issue is the search of a vehicle driven

by the defendant, which was reported to contain a stolen

cellular telephone (cell phone).  The defendant makes two

arguments on appeal with respect to the search.  First, he

contends that the police did not have probable cause to believe he had committed a crime at the moment he was arrested and therefore there was no valid search incident to that arrest. The two crimes at issue are operating a motor vehicle with a suspended registration and receiving stolen property with a value exceeding $250. Second, he argues that the inevitable discovery exception does not apply.

Because we conclude that the inevitable discovery exception applies, we need not consider whether the search was also justified as incident to the defendant's arrest. However, because there is a split of opinion among trial court decisions and the issue has not been addressed by the appellate courts, we address whether the misdemeanor of operating a motor vehicle with a suspended registration is an arrestable offense, and the circumstances in which it is so. We conclude that there is no statutory authority to arrest an individual for operating a motor vehicle with a revoked[1] registration but that, under circumstances not present here, an arrest may be made under the established common law rule pertaining to warrantless arrests for misdemeanors. As to the defendant's second argument, we conclude that, even accepting that an excessive show of force

---

[1] The defendant was charged with operating a motor vehicle with a suspended registration. The motion judge found that the registration had been revoked. We use the two terms interchangeably -- nothing turns on the distinction.

was employed by the police in the circumstances presented, the inevitable discovery exception applies.

In addition, we reject the defendant's argument that the evidence was insufficient to prove possession of stolen property. Accordingly, we affirm.

Background. The defendant was charged in District Court with two counts of receiving stolen property having a value greater than $250, G. L. c. 266, § 60; and one count each of possession of a burglarious instrument, G. L. c. 266, § 49; receiving a stolen credit card, G. L. c. 266, § 37B(b); improper use of a credit card, G. L. c. 266, § 37B(f); forgery of a document, G. L. c. 267, § 1; uttering a false writing, G. L. c. 267, § 5; and operating a motor vehicle with a suspended registration, G. L. c. 90, § 23.[2] With the exception of the motor vehicle violation, the tangible evidence of the crimes was obtained through a warrantless search of a van driven by the defendant.

After an evidentiary hearing consisting of one witness (the arresting officer) and one exhibit (the Burlington police

---

[2] After a jury trial, the defendant was found guilty of two counts of receiving stolen property with a value greater than $250, and one count of receiving a stolen credit card. He was acquitted of possession of a burglarious instrument and improper use of a credit card. The forgery and uttering charges were dismissed with the defendant's consent, and the motor vehicle violation was disposed of by nolle prosequi. He was sentenced to one year in the house of correction on each count on which he was found guilty, all sentences to run concurrently.

department's inventory policy),[3] the motion judge denied the defendant's pretrial motion to suppress, and found the following facts which we adopt wholesale, there being no claim or showing of clear error.

> "Officer Peter Abaskharoun has been with the Burlington Police Department for six years with an additional two years as a New Hampshire state trooper. On the evening of January 7, 2010 at 8:45, he was dispatched to Wendy's at 120 Mall Road for a call that a victim of a theft who had reported that a motor vehicle with two suspects had just pulled out of Wendy's restaurant. The victim's cellular telephone had been stolen. The victim had used her Global Positioning System (GPS) tracker to locate her cellphone from Woburn to Burlington and obtained the license plate to the car, to which the GPS locator had led the victim.

> "Officer Abaskharoun ran the license plate and learned that the registration to the Chrysler Town and Country van had been revoked. Detective Redfern had spoken to the victim relating to the identity of the motor vehicle. Detective Redfern advised the officer to 'use caution.' Detective Redfern with other officers were down the street with the victim.

> "When the officer was on Mall Road, the vehicle with the queried license plate passed the officer. The officer activated his cruiser lights and stopped the vehicle on South Bedford Street. Officer Abaskharoun called for other units. He conducted a 'felony stop' of the car with his gun directed at the van. He used the public address (PA) system to order the driver to shut off the engine, throw the car keys out of the window and exit the van.

---

[3] Neither party included the inventory policy in the record on appeal. As the proponent of the evidence (as well as the party bearing the burden of establishing the validity of the warrantless search), it was the Commonwealth's obligation to include the document in the appellate record. That said, we have ourselves obtained a copy of the inventory policy from the trial court.

"Defendant Ubilez was the driver.  The defendant complied and walked backwards with his hands in the air to the officer.  Officer Abaskharoun ordered the defendant to his knees and handcuffed him.  The officer pat-frisked the defendant, and no weapons were found.  Officer Abaskharoun read Miranda rights to the defendant who refused to answer him.

"As he looked into the vehicle, the officer saw two purses in plain view.  Neither the defendant nor the passenger was a woman.  The officer obtained a description of the purse from the victim:  a red Coach purse.  The purse seen in the rear seat matched the description provided by the victim.

"Upon search [of] the motor vehicle, the police found a tan purse with a female identification behind the driver's seat.  Other items found were laptops, GPS units and cellphone[s].  The Wendy's bag of food was still warm to the touch.  There were tools to punch out a car window pane including a screw driver.  The defendant was arrested.

"There were too many items to inventory.  The motor vehicle was towed and left in the sally port of the Burlington Police Department.  An inventory search was conducted pursuant to the Burlington Police Department Motor Vehicle Inventories . . . .  The reporting party, Ms. Reynolds, identified her red Coach purse.  The identification in the other purse was that of a Diane Stafford."

Discussion.  1.  Inevitable discovery.  The defendant concedes that, given the contemporaneous report by the victim that her stolen cell phone was in the van driven by the defendant, and the officer's knowledge that the van's registration had been revoked, there was sufficient ground to stop the van.  He argues, however, that discovery of the items in the van was not inevitable under the two-step analysis

announced in Commonwealth v. O'Connor, 406 Mass. 112 (1989).  We disagree.

In the first step of the O'Connor analysis, "the Commonwealth has the burden of proving the facts bearing on inevitability by a preponderance of the evidence and, once the relevant facts have been proved, that discovery by lawful means was 'certain as a practical matter.'"  Commonwealth v. Perrot, 407 Mass. 539, 547 (1990), quoting from Commonwealth v. O'Connor, 406 Mass. at 117.  Inevitability is determined by the "circumstances existing at the time of the unlawful seizure."[4] Commonwealth v. Perrot, 407 Mass. at 548, quoting from Commonwealth v. O'Connor, 406 Mass. at 117 n.4.

Here, Officer Abaskharoun knew, before stopping the van, that its registration had been revoked.  Under G. L. c. 90, § 9, an unregistered vehicle cannot be operated, nor can it be allowed to remain on any way.[5]  Because the van was unregistered,

---

[4] The defendant contends that he was unlawfully seized when the officer, with his gun drawn and pointing towards the van, ordered him to exit.  The Commonwealth agreed at oral argument that the defendant was under arrest at that moment, but disagrees that the arrest was unlawful.  The disagreement is of no significance here because discovery was inevitable as a practical matter when the officer stopped the van.

[5] "No person shall operate, push, draw or tow any motor vehicle or trailer, and the owner or custodian of such a vehicle shall not permit the same to be operated, pushed, drawn or towed upon or to remain upon any way . . . , unless such vehicle is registered in accordance with this chapter." G. L. c. 90, § 9, as amended by St. 1977, c. 705.

"the officers could not permit the continued unlawful operation of th[e] vehicle on the public roadways, nor could they leave the vehicle unattended on the shoulder of a busy main road." Commonwealth v. Daley, 423 Mass. 747, 750 (1996) (impoundment required for unregistered vehicle). As a practical matter, therefore, it was inevitable that the van would be impounded once it had been stopped. Moreover, the defendant does not challenge the fact that impounded vehicles are required to be inventoried under the Burlington police department's written inventory policy. Nor does he argue that the conduct or scope of the search violated the written policy. See Commonwealth v. Silva, 61 Mass. App. Ct. 28, 32 (2004). The first step of O'Connor's two-step test is accordingly satisfied.

In the second step, we are to consider the severity of the alleged constitutional violation. Commonwealth v. Perrot, 407 Mass. at 547. In this regard, "[b]ad faith of the police, shown by such activities as conducting an unlawful search in order to accelerate discovery of the evidence, will be relevant in assessing the severity of any constitutional violation." Commonwealth v. O'Connor, 406 Mass. at 118. Here, unlike the circumstances in Perrot and O'Connor, we are not faced with a situation where the police conduct was designed to obtain evidence or to circumvent the warrant requirement. Nor is there any claim or showing of bad faith on the part of the officer.

However, relying on United States v. Rullo, 748 F. Supp. 36 (D. Mass. 1990), the defendant contends that the second step of the O'Connor analysis is not satisfied because the officer used excessive force. In Rullo, officers, believing that the defendant had fired a gun at them and that the gun was still in his possession, beat him while repeatedly asking about the location of the gun. As a result, the defendant told the officers where the gun could be found. Ibid. The judge found that the defendant's statements were coerced, and that they led directly to the discovery of physical evidence leading directly to his conviction. Id. at 43. Although the judge determined that, given the gun's proximity to the location of the shooting, the weapon would inevitably have been found, he concluded that the inevitable discovery exception did not apply for two reasons. Id. at 44. First, he determined that the gun's discovery was not independent of the police misconduct because the search was conducted by the same officers who beat the defendant. Ibid. Second, he determined that application of the inevitable discovery doctrine in the circumstances presented "would encourage law enforcement officers to believe that they can avoid the burden of a prolonged area search by physically abusing a suspect, without significant risk of forfeiting the admissibility of any physical evidence." Ibid.

At the outset, we note that Rullo deals with the United States Court of Appeals for the First Circuit's three-prong articulation of the inevitable discovery exception set out in United States v. Silvestri, 787 F.2d 736, 744 (1st Cir. 1986), cert. denied, 487 U.S. 1233 (1988), rather than the two-step analysis of O'Connor. In addition, Rullo's analysis has not been adopted or cited approvingly elsewhere. See United States v. Ford, 22 F.3d 374, 380 (1st Cir.), cert. denied, 513 U.S. 900 (1994); United States v. Alexander, 540 F.3d 494, 503 (6th Cir. 2008), cert. denied, 556 U.S. 1173 (2009). That said, the decision in Rullo turned on an inquiry similar to the second step of the O'Connor analysis; namely, whether the police conduct was taken in bad faith, or designed to obtain evidence while avoiding the warrant requirement. As noted above, the facts here do not fall within these parameters, even accepting, for purposes of discussion, that the force employed was excessive in the circumstances presented.[6]

---

[6] The defendant was stopped based on a report that he was driving a van containing a stolen cell phone, and information that the vehicle's registration had been revoked. In other words, the police were faced with a minor property crime and a nonhazardous motor vehicle violation. The defendant complied with all of the officer's instructions, including to stop the van, to drop his keys out of the van's window, to leave the van, to walk backwards towards the officer, and to kneel while being handcuffed. Although the motion judge credited the officer's testimony that he had been told by another officer to "use caution," that testimony was unadorned and unexplained. The motion judge stated that he did not interpret the phrase to mean

Thus, even accepting the defendant's contention that the arresting officer employed excessive force, we conclude that the second step of O'Connor is satisfied and that, accordingly, the inevitable discovery exception applies.

2. Search incident to arrest for operating motor vehicle with revoked registration. Given our conclusions above, there is no need for us to reach the defendant's argument that the search was not incident to a lawful arrest, either for receiving stolen property or for operating a motor vehicle with a revoked registration. That said, because the issue has not previously been considered at the appellate level in Massachusetts and trial court decisions are inconsistent as to whether it is an arrestable offense, we address the defendant's argument with respect to a charge of operating a motor vehicle with a revoked registration in violation of G. L. c. 90, § 23. The same considerations do not apply with respect to a charge of receiving stolen property and, therefore, we do not consider the defendant's argument with respect to that charge.

"Among the exceptions to the warrant requirement is a search incident to a lawful arrest." Arizona v. Gant, 556 U.S.

---

that the defendant was armed and dangerous. The motion judge also stated that there was no other evidence to suggest that the defendant was armed and dangerous. "An approach with drawn guns is generally thought excessive in the absence of any suggestion that the defendant is armed or other circumstances suggesting the possibility of violence." Commonwealth v. Fitzgibbons, 23 Mass. App. Ct. 301, 308 (1986).

332, 338 (2009), citing Weeks v. United States, 232 U.S. 383, 392 (1914). Operating a motor vehicle with a revoked or suspended registration, in violation of G. L. c. 90, § 23, is a misdemeanor[7] for which there is no statutory authority to arrest. See G. L. c. 90, § 21 (offense not listed among arrestable motor vehicle offenses). In the absence of statutory authority, a police officer may make a warrantless arrest for a misdemeanor only where it "(1) involves a breach of the peace, (2) is committed in the presence or view of the officer . . . and (3) is still continuing at the time of the arrest or only interrupted, so that the offence and the arrest form parts of one transaction." Commonwealth v. Conway, 2 Mass. App. Ct. 547, 550 (1974), quoting from Commonwealth v. Gorman, 288 Mass. 294, 297 (1934). On the facts found here, the defendant's operation of the vehicle without a valid registration did not constitute a breach of the peace. "To find a breach of the peace . . . an act must at least threaten to have some disturbing effect on the public." Commonwealth v. Baez, 42 Mass. App. Ct. 565, 570 (1997). There was no evidence that the defendant's operation of the vehicle was erratic or negligent, or that it in any other way had a disturbing effect on the public. Compare Commonwealth

---

[7] The crime is punishable "for a first offence by a fine of not less than five hundred nor more than one thousand dollars or by imprisonment for not more than ten days, or both." G. L. c. 90, § 23, as amended by St. 1990, c. 256, § 2. See G. L. c. 274, § 1.

v. Jewett, 471 Mass. 624, 630 (2015) (leading police on vehicle chase through residential neighborhood is breach of peace).

There are two additional reasons why this was not a permissible search incident to an arrest. "'The purpose, long established, of a search incident to an arrest is to prevent an individual from destroying or concealing evidence of the crime for which the police have probable cause to arrest, or to prevent an individual from acquiring a weapon to resist arrest or to facilitate an escape.' Commonwealth v. Santiago, 410 Mass. 737, 743 (1991). Thus, police may search an automobile incident to the arrest of its driver only where the arrestee 'is within reaching distance of the vehicle or it is reasonable to believe the vehicle contains evidence of the offense of arrest.' Arizona v. Gant, supra at 346." Commonwealth v. Perkins, 465 Mass. 600, 605 (2013). Here, the defendant was handcuffed while kneeling after he had walked away from the van and towards Officer Abaskharoun. At that point, the officer "could not reasonably have believed that he might access weapons inside the automobile." Ibid.

Moreover, the officer could not have reasonably believed that evidence of the offense might be found in the van. The situation presented here is almost identical to that in Perkins, 465 Mass. at 605, where the court held that the arresting officer did not have reason to believe that evidence of the

crime of operating a motor vehicle without a valid license would be found in the automobile the defendant was driving.  In that case, the defendant's operation of the vehicle combined with the officer's knowledge that the defendant did not have a license was insufficient to establish a reasonable belief that evidence of the offense would be found in the vehicle.  Ibid.  The facts here are on all fours.

Thus, the search was not incident to a lawful arrest for operating a motor vehicle with a revoked registration.  In the circumstances presented, it was not an arrestable offense, the defendant was not within reach of the vehicle, and there was no reason to believe that evidence of the offense would be found in the van.

3.  Sufficiency of the evidence.  Viewed in the light most favorable to the Commonwealth, the evidence and the reasonable inferences to be drawn from it were sufficient to prove beyond a reasonable doubt the elements of receiving stolen property with a value greater than $250.[8]  Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).  On January 7, 2010, Diane Stafford and Betsy Reynolds both discovered that their cars had been broken

---

[8] "In order to be guilty of the crime of receiving stolen goods, '(1) one must buy, receive or aid in the concealment of property which has been stolen or embezzled, (2) knowing it to have been stolen.'"  Commonwealth v. Yourawski, 384 Mass. 386, 387 (1981), quoting from Commonwealth v. Donahue, 369 Mass. 943, 949, cert. denied, 429 U.S. 833 (1976).

into while parked.  In both cases, the car window had been smashed, and the women's purses had been stolen, together with other personal items that had been left in the cars.

Reynolds owned two cell phones; one was inside a red purse that had been stolen, the other was with her.  Using a tracking function on the stolen cell phone, Reynolds was led to a 7-Eleven store in Woburn.  There, she wrote down the license plate information of every car in the parking lot.  She then tracked the stolen cell phone to a Wendy's restaurant in Burlington, where she observed a van similar to one she had observed at the 7-Eleven store and with a license plate number she had previously recorded.  Reynolds observed the defendant leave the van and discard a "white trash bag" into a trash bin.  The bag was later discovered to contain a wallet, receipts, and other personal items belonging to Reynolds and Stafford.  The defendant then returned to the van and drove away.  Reynolds reported the situation to the police, who stopped the van while she continued to track it.  Reynolds's and Stafford's purses were in open view on the back seat of the van.  The inventory of the van search conducted after the defendant's arrest uncovered multiple cell phones, a laptop computer, a center punch (an item commonly used to break into cars), various tools, and multiple credit cards in Stafford's name.  Contrary to the defendant's argument, it was certainly within the jury's province to

determine beyond a reasonable doubt, on these facts, that the defendant possessed stolen property.

<u>Judgments affirmed</u>.