NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

15-P-622                                           Appeals Court
15-P-623
15-P-624


COMMONWEALTH  vs.  MONIQUE L. SUTERS (and two companion cases[1]).


Nos. 15-P-622, 15-P-623, & 15-P-624.

Berkshire.     May 9, 2016. - October 7, 2016.

Present:  Agnes, Massing, & Kinder, JJ.


Search and Seizure, Probable cause, Fruits of illegal search,
     Consent, Emergency.  Evidence, Result of illegal search.
     Constitutional Law, Search and seizure, Probable cause.
     Probable Cause.




     Complaints received and sworn to in the Northern Berkshire Division of the District Court Department on January 10 and June 12, 2014.

     Pretrial motions to suppress evidence were heard by Michael J. Ripps, J.

     An application for leave to prosecute an interlocutory appeal was allowed by Francis X. Spina, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.


     Joseph A. Pieropan, Assistant District Attorney, for the Commonwealth.

---

     [1] Commonwealth vs. Whitney L. Suters and Commonwealth vs. Makenzie L. Suters.

James F. Petersen for the defendants.

AGNES, J.  In this case we consider the applicability of the attenuation exception to the exclusionary rule.  Under this exception, evidence that would not have been obtained by the police but for an unlawful search or seizure is nonetheless admissible because the connection between the unlawful police conduct and the evidence seized is separated by an independent act by the defendant that is sufficient to dissipate the taint of the initial unlawful search or seizure.  See Commonwealth v. Martin, 457 Mass. 14, 22-23 (2010).[2]

---

[2] "The suppression of evidence under the exclusionary rule is a 'judicially created remedy,' whose 'prime purpose is to deter future unlawful police conduct.'"  Commonwealth v. Lora, 451 Mass. 425, 438 (2008), quoting from United States v. Calandra, 414 U.S. 338, 347, 348 (1974).  There are three established exceptions to the exclusionary rule under both Federal and State law.  The attenuation exception is derived from Wong Sun v. United States, 371 U.S. 471, 487-488 (1963), where the Supreme Court observed that "[w]e need not hold that all evidence is fruit of the poisonous tree simply because it would not have come to light but for the illegal actions of the police.  Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint" (quotation omitted).  Another exception is the independent source doctrine, whereby evidence obtained unlawfully is nonetheless admissible if it is obtained later, independently and by lawful means that are not tainted by the initial illegality.  See, e.g., Commonwealth v. Cassino, 474 Mass. 85, 90 (2016); Commonwealth v. Pearson, 90 Mass. App. Ct. 289, 291-294 (2016).  Finally, under the inevitable discovery exception, evidence obtained as a result of an unlawful search or seizure will be admissible if the Commonwealth establishes two things: (1) as a practical

The cases come to us by interlocutory appeals from the allowance of the defendants' motions to suppress evidence of unlawful amounts of raw marijuana and related paraphernalia discovered in the basement of the defendants' home. For the reasons that follow, we agree with the motion judge that the initial entry by the police into the defendants' home without a warrant was justified based on voluntary consent by an occupant, as well as the emergency exception. We also conclude, contrary to the judge's ruling below, that the police were justified in entering a basement room, where a large quantity of marijuana was observed, to effect the arrest of one of the defendants for assault and battery on a police officer. Because the exclusionary rule should not be applied in such circumstances, we reverse.

Background. We summarize the facts as found by the motion judge, supplemented with uncontroverted testimony from the hearing on the motion to suppress, consistent with the judge's findings. On January 4, 2014, the State police received a 911

matter, the discovery of the evidence was inevitable, and (2) the police did not act in bad faith or with the intent to evade constitutional requirements. See, e.g., Commonwealth v. Ubilez, 88 Mass. App. Ct. 814, 817-819 (2016). See generally Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 20-3 (2016). There are other circumstances in which a search or seizure involves a violation of the law that is not of sufficient magnitude to trigger the application of the exclusionary rule. See Commonwealth v. Hernandez, 456 Mass. 528, 533 (2010). See generally Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 20-1.

telephone call from 38 East Quincy Street in North Adams, during which a man and a woman were heard yelling about a water problem, and then the call was disconnected.  The State police advised the North Adams police, and Officers David Lemieux and Trevor Manning were dispatched to the house at around 11:30 P.M.  There the officers encountered defendant Monique Suters, who expressed concern about the possibility of an electrical fire and asked the officers to follow her adult son, defendant Makenzie,[3] into the basement to assist with turning off the water.  Inside the home, the officers observed water coming through a ceiling fan in the kitchen.  The officers radioed dispatch to send the fire department and then descended into the basement.

Immediately upon entering the basement, the officers smelled "a strong odor of fresh marijuana."  There was water gathering in pools on the floor and coming down the walls.  While the police were looking for the water shut-off valve, Monique's husband, defendant Whitney Suters, entered the basement through a door from the outside.  He identified himself, apologized to the officers, and said he knew the location of the shut-off valve.  Whitney then walked past the officers, opened a door into another room in the basement

---

[3] Because all three defendants share a surname, we refer to them by their first names to avoid confusion.

(second room), walked inside, and closed the door behind him. Officer Manning directed Officer Lemieux to follow Whitney into the second room because he "did not feel comfortable with [Whitney] being in there by himself." Officer Lemieux opened the door "about half way," and Whitney, from inside the second room, pushed the door back into Lemieux. Officer Lemieux grabbed Whitney, and then Officer Manning grabbed him as well. A "minor scuffle ensued" and the three ended up inside the second room. Whitney was brought to the floor and handcuffed.

The officers asked Whitney why he had become aggressive with them, and he answered that he did not want them in his house. It was not until this point that Officer Manning looked up and saw a mason jar containing what he believed to be more than one ounce of raw marijuana. The officers then arrested Whitney for assault and battery on a police officer and called a drug investigator, who applied for a search warrant. A subsequent search of the basement yielded more marijuana and related paraphernalia.

Whitney was charged five days later with assault and battery on a police officer, two counts of possession with intent to distribute a class D substance (marijuana), and conspiracy to violate drug laws. About five months later, Monique and Makenzie were charged with similar drug offenses. All three defendants moved to suppress all of the marijuana on

the ground that the officers' warrantless entry into the second room, where they initially found a criminal amount of marijuana, was unlawful. After an evidentiary hearing, the motions were allowed on the ground that the Commonwealth had failed to show justification for entering the second room.

Discussion. On review of a "ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of his ultimate findings and conclusions of law.'" Commonwealth v. Scott, 440 Mass. 642, 646 (2004), quoting from Commonwealth v. Jimenez, 438 Mass. 213, 218 (2002).

Under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights, the police are not authorized to enter a home unless they act on the basis of (1) voluntary consent, see Commonwealth v. Rogers, 444 Mass. 234, 236 (2005);[4] (2) probable cause and exigent circumstances, see, e.g., Commonwealth v. Jewett, 471 Mass. 624, 628-629 (2015); or (3) an objectively reasonable belief that there is an injured person or a person in imminent danger of physical harm inside the home who requires immediate assistance. See, e.g., Commonwealth v. Entwistle, 463 Mass.

_____

[4] The Commonwealth has the burden to establish (1) that consent was given, and (2) that it was voluntary, i.e., "unfettered by coercion, express or implied." Commonwealth v. Harmond, 376 Mass. 557, 561 (1978), quoting from Commonwealth v. Walker, 370 Mass. 548, 555, cert. denied, 429 U.S. 943 (1976).

205, 213 (2012). See also Commonwealth v. Duncan, 467 Mass. 746, 747 (2014) ("[I]n appropriate circumstances, animals, like humans, should be afforded the protection of the emergency aid exception").[5]

a. Initial entry into the home. There is no dispute in this case whether the initial entry into the defendants' home by the police was justified. "The question whether consent was voluntary is a question of fact to be determined in the circumstances of each case, with the burden of proof on the government." Commonwealth v. Alleyne, 474 Mass. 771, 783 (2016), quoting from Commonwealth v. Carr, 458 Mass. 295, 302 (2010). The judge found that the police acted on the basis of voluntary consent by a co-occupant (Monique). See Georgia v. Randolph, 547 U.S. 103, 109 (2006); Commonwealth v. Rogers, supra at 237. An occupant's consent is valid as against the wishes of an absent, nonconsenting co-occupant. See United

---

[5] The Commonwealth urges us to recognize a broader authority on the part of the police to make warrantless entries into homes, in the absence of probable cause or consent, when the police are engaged in a community caretaking function. Community caretaking functions include public service and public safety activities performed by the police that are "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." Commonwealth v. Evans, 436 Mass. 369, 372 (2002), quoting from Cady v. Dombrowski, 413 U.S. 433, 441 (1973). This question was left unanswered in Commonwealth v. Entwistle, 463 Mass. at 219 n.8. Because we rest the result in this case on the inapplicability of the exclusionary rule, see infra, it is unnecessary for us to resolve this question, and we decline to do so.

States v. Matlock, 415 U.S. 164, 170 (1974) ("[T]he consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared").[6]  Moreover, Monique did not state or imply by her conduct that her consent was in any way limited beyond the obvious limitation that it was to enable the police to assist her in turning off the water.

b.  Entry into the second room in the basement.  The Commonwealth advances several arguments in support of its contention that the police had the right to enter the second room after Whitney arrived on the scene and closed the door upon entering that room.[7]

1.  Consent.  The Commonwealth argues that Whitney's action in closing the door behind him did not revoke or limit Monique's earlier consent to enter the home to shut off the water valve,

---

[6] This is not a case in which the police had any reason to doubt Monique's authority to give them permission to enter the home.  Contrast Commonwealth v. Lopez, 458 Mass. 383, 395 (2010).  See generally Commonwealth v. Santos, 465 Mass. 689, 695-696 (2013) (when police obtain consent to enter home from someone they reasonably believe has actual authority, they are not required to inquire further).

[7] The Commonwealth does not argue that the odor of fresh marijuana alone established probable cause to enter the second room.  See Commonwealth v. Locke, 89 Mass. App. Ct. 497, 498 n.3 (2016) ("The decisional law of the Supreme Judicial Court makes clear that the description of the odor as 'strong' or 'very strong' does not, without more, constitute reasonable suspicion or probable cause to believe that more than one ounce of marijuana is present in light of the subjective and variable nature of the strength of smell").

and thus the police had a right to open the door and enter the second room. The scope of any consent that is granted is determined on the basis of an objective assessment of the facts. See, e.g., Commonwealth v. Porter P., 456 Mass. 254, 267 (2010); Commonwealth v. Lopez, 458 Mass. 383, 393 (2010). "Because a finding of voluntariness is a question of fact, it should not be reversed absent clear error by the judge." Commonwealth v. Carr, supra at 303.

The general rule is that consent for the police to enter a home or to conduct a search may be withdrawn or limited at any time. See Commonwealth v. Stewart, 469 Mass. 257, 261-262 (2014), and cases cited. It is also settled that in the absence of exigent circumstances, when one co-occupant with common authority over the premises objects to the entry or continued presence of a guest invited onto the premises by another co-occupant or co-occupants, the authority of the other co-occupant to consent is lost. Georgia v. Randolph, supra at 114 ("Since the co-tenant wishing to open the door to a third party has no recognized authority in law or social practice to prevail over a present and objecting co-tenant, his disputed invitation, without more, gives a police officer no better claim to reasonableness in entering than the officer would have in the absence of any consent at all").

It is not necessary that a co-occupant with common authority over the premises, who objects to the entry or continued presence of a third party such as a guest or a police officer, state the objection orally. As the Supreme Judicial Court has explained, "[w]hat, if any, limitations on the consent are implied by the language or conduct of the consenting party is a question in the first instance for the judgment of the police officers to whom the consent is given. The ultimate question is whether, in light of all the circumstances, a man of reasonable caution would be warranted in the belief that some limitation was intended by the consent giver." Commonwealth v. Cantalupo, 380 Mass. 173, 178 (1980). See Burton v. United States, 657 A.2d 741, 746-747 (D.C. 1994) ("[C]onduct withdrawing consent must be an act clearly inconsistent with the apparent consent to search, an unambiguous statement challenging the officer's authority to conduct the search, or some combination of both" [footnotes omitted]).

The evidence supports the judge's conclusion that when Whitney suddenly entered the basement, informed the police and others present that he knew where the shut-off valve was located, and entered the second room closing the door behind him, a reasonable person in the position of the police officers would understand that any consent that may previously have been

given by Monique with respect to entry into the second room was withdrawn.

2. Emergency aid exception. The Commonwealth argues in the alternative that notwithstanding the withdrawal of consent, the police were justified in opening the door to the second room under the emergency aid exception. This doctrine authorizes the police to lawfully enter a home without probable cause or a warrant "to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." Brigham City v. Stuart, 547 U.S. 398, 403 (2006), quoting from Mincy v. Arizona, 437 U.S. 385, 392 (1978). See Commonwealth v. Entwistle, 463 Mass. at 213. The Commonwealth argues that the water leaking onto the pipes, walls, and exposed wiring created a dangerous situation that, when viewed objectively, required them to act to protect the defendants as well as themselves.

In order for the emergency aid exception to apply, the emergency condition must be operative at the time the police enter the home or building, see Commonwealth v. Kirschner, 67 Mass. App. Ct. 836, 841-842 (2006), and the police are authorized to remain on the premises only as long as there are objectively reasonable grounds for the belief that emergency assistance is still required. See Commonwealth v. Peters, 453

Mass. 818, 825-826 (2009).[8]  "[T]he Commonwealth has the burden of showing that authorities had a reasonable ground to believe that an emergency existed and that the actions of the police were reasonable in the circumstances."  Commonwealth v. Knowles, 451 Mass. 91, 96 (2008).  "In determining whether entry is justified under the emergency aid exception, we look solely to the objective circumstances known to the police at the time of entry and determine whether those circumstances provide a reasonable basis for the entry."  Commonwealth v. Entwistle, supra at 214.  The officers' subjective motivation is not relevant.  See Michigan v. Fisher, 558 U.S. 45, 47 (2009).

We assume for purposes of this analysis that the conditions at the time the police first entered the home constituted a genuine emergency due to the risk of a fire or electrocution.[9] The existence of a genuine emergency, judged by an objective standard, however, is a necessary but not sufficient basis to justify the seizure or observation of evidence of criminal

_____

[8] It should be noted that evidence of criminal activity that is found in plain view during an emergency entry may be seized by the police without a warrant under the plain view doctrine. See Commonwealth v. Ringgard, 71 Mass. App. Ct. 197, 202-203 (2008).

[9] In order for the police to enter a home under the emergency aid exception, "[i]t suffices that there are objectively reasonable grounds to believe that emergency aid might be needed."  Commonwealth v. Entwistle, 463 Mass. at 214. The doctrine is not limited in its application to cases in which the police are aware that someone has suffered a life-threatening injury or that a crime has been committed.  Ibid.

activity by the police as they move through a home or building. Under the emergency aid exception, the police conduct must be reasonable and limited in scope to the purpose of the warrantless entry. Commonwealth v. Peters, supra at 823, 825. For example, in the Entwistle decision, where the victim's family and friends had not heard from her for two days, the Supreme Judicial Court explained that a genuine emergency justified the police making a warrantless entry into the victim's home, and that it was reasonable for the police to examine vehicle lease papers that were in plain view on the kitchen table to learn the vehicle identification number of the family automobile. Commonwealth v. Entwistle, supra at 216-217. However, the court reasoned that the police exceeded the scope of the emergency aid exception when they turned on a digital camera to determine the dates of the most recent photographs that were taken. Id. at 217.

In assessing whether the police exceeded their authority under the emergency aid exception in this case, Commonwealth v. Sondrini, 48 Mass. App. Ct. 704, 706-707 (2000), is instructive. There, a neighbor called the fire department to report that water was leaking into her apartment from upstairs. From a fire escape outside the second-floor apartment, police officers who had been called to the scene observed paraphernalia used for smoking marijuana in plain view on a table. They then entered

the second-floor apartment.  Although the police observed that the leaking water was due to a puncture in a water bed, they opened a closed door and found a closet containing a marijuana growing operation.  Id. at 705.  Rejecting the Commonwealth's argument that the police conduct was justified under the emergency aid exception, this court noted that even if the initial entry by the police was justified, their subsequent conduct, which included a search for evidence of a crime, was not.  Id. at 707.

 As it was unnecessary in Sondrini for the officers to open the closet door, it was not necessary in the present case for the police to open the door and follow defendant Whitney into the second room to address the purpose of their original entry. Whitney stated that he knew where the shut-off valve was located and then immediately entered the second room and closed the door.  There was no indication that he was incapable of turning off the water or needed assistance in doing so.  Indeed, the motion judge found that Officer Manning told Officer Lemieux to follow Whitney into the second room only "to see if he needed any assistance because he 'did not feel comfortable with him being in there by himself.'"  We conclude, therefore, that the

emergency aid exception did not justify the action taken by the police in opening the door to the second room.[10]

c. <u>Application of the exclusionary rule</u>.  The motion judge ruled that in the absence of any justification for opening the door to the second room, the exclusionary rule required the suppression of the fruits of that unlawful police conduct, namely the large mason jar filled with raw marijuana.[11]  The judge also ruled that the suppression of this evidence did not affect the prosecution of the defendant for the crime of assault and battery on a police officer.[12]

---

[10] The motion judge evaluated the actions taken by the police under the rubric of the community caretaking function, and reached essentially the same conclusion, namely that the police failed to act reasonably when they opened the door to the second room because there was no evidence that they feared for their safety because of the leak, or that Whitney needed assistance.  As stated in note 5, <u>supra</u>, we decline to address whether the community caretaking function authorizes a warrantless entry into a residence without probable cause or exigent circumstances.

[11] Because the mason jar provided the probable cause for the search warrant, the execution of which led to the discovery of more marijuana and related paraphernalia in another room in the basement, suppression of the mason jar would necessitate suppression of all of the marijuana and paraphernalia discovered after the search warrant was obtained.  On the other hand, if the mason jar and its contents were not subject to the exclusionary rule, neither would be the rest of the marijuana and paraphernalia.

[12] The judge did not expressly address whether this case falls within the exception to the exclusionary rule based on attenuation of the taint.  While raised by the Commonwealth below only obliquely, we address the issue for several reasons.  First, the judge's ruling that his suppression order does not affect the prosecution of the defendant for assaulting a police

In determining whether to apply the exclusionary rule to suppress the fruits of an illegal search or seizure, we do not apply a "but for" test.  Commonwealth v. Lundrin, 87 Mass. App. Ct. 823, 826-827 (2015).  Rather, the question is "whether . . . the evidence . . . has been come at by exploitation of [that] illegality or instead by means sufficiently distinguishable to be purged of the primary taint."  Wong Sun v. United States, 371 U.S. 471, 488 (1963).  "It is the Commonwealth's burden to establish that the evidence it has obtained and intends to use is sufficiently attenuated from the underlying illegality so as to be purged from its taint."  Commonwealth v. Damiano, 444 Mass. 444, 454 (2005).

The attenuation doctrine does not apply merely because the defendant commits some voluntary act in response to an unlawful search or seizure.  See Commonwealth v. Borges, 395 Mass. 788, 795 (1985).  We apply the three-part test developed in Brown v. Illinois, 422 U.S. 590, 603-604 (1975), and consider the following:  "(1) the temporal proximity of the arrest to the

officer is impliedly based on the attenuation of the taint doctrine.  See Commonwealth v. Gomes, 59 Mass. App. Ct. 332, 337 (2003) ("Neither Fourth Amendment nor art. 14 exclusionary rules extend to suppression of evidence of crimes that are in reaction to an illegal search or seizure").  Second, the parties have fully briefed the issue and our resolution of it does not require any additional fact finding.  Third, in reaching this issue, we avoid the need to resolve a separate constitutional question specifically left open by the Supreme Judicial Court. See note 5, supra.

defendant's response; (2) the presence or absence of intervening circumstances; and (3) the purpose and flagrancy of the [police] misconduct in the context of the circumstances of the arrest." Commonwealth v. Borges, supra at 796.

In the present case, the judge was correct in recognizing the significance of an intervening act that constituted a new criminal offense, which determines whether the case fits within the attenuation of the taint exception. For example, in Commonwealth v. Gomes, 59 Mass. App. Ct. 332, 334 (2003), the police responded to a call from a tenant who was awakened by a loud, banging noise below her apartment. An inspection of the building's exterior led the police to a residence associated with the adjoining yard. Id. at 335. A uniformed police officer knocked on the door and identified himself, and the person who answered opened the door just a crack, was intoxicated, and refused to identify himself or open the door any further. Ibid. The officer kept his hand on the door and placed his foot inside the open space to keep the door from being closed. The person who had answered the door then shoved the officer in the chest. Ibid. A melee broke out between the police and the defendants, and the defendants were subsequently convicted of assault and battery. Id. at 333-334.

In affirming the convictions, this court rejected the defendants' argument that the exclusionary rule should prohibit

the Commonwealth from relying on any evidence of the assault and battery because this evidence would not have been obtained but for the illegal entry by the officer. "Neither Fourth Amendment nor art. 14 exclusionary rules extend to suppression of evidence of crimes that are in reaction to an illegal search or seizure." Id. at 337. See Commonwealth v. King, 389 Mass. 233, 245 (1983) (defendant could be prosecuted for crimes arising out of firing gun at police even though shooting did not begin until after police stopped defendant's motor vehicle without justification); Commonwealth v. Holmes, 34 Mass. App. Ct. 916, 917-918 (1993) (although initial police observation of bulge in defendant-passenger's pocket during unlawful stop of vehicle would not justify continued detention of vehicle or defendant, defendant's action in suddenly opening door, slamming it against one of the officers and fleeing scene "gave rise to an independent justification for their pursuit" and subsequent seizure of weapon).

The motion judge recognized this principle because he ruled that his suppression order did not affect the prosecution of Whitney for assault and battery on a police officer. However, by allowing the motion to suppress any evidence of the marijuana and related paraphernalia, the judge implicitly ruled that the assault and battery did not attenuate the taint of the unlawful search. We agree with the Commonwealth that the two rulings are

inconsistent, because the judge's findings of fact make clear that the police did not see the mason jar containing marijuana until after they lawfully arrested the defendant for the assault and battery on a police officer. Although this observation was close in time to the unlawful entry into the second room, it did not come about by exploiting that unlawful act, but instead was the result of Whitney's independent act of pushing the door into the police officer, which established probable cause for Whitney's arrest. See Commonwealth v. Fredette, 396 Mass. 455, 460 (1985). Applying the exclusionary rule to evidence seized in plain view while the officers were lawfully present to effect an arrest would not further the exclusionary rule's purpose as a deterrent against unlawful conduct. See Commonwealth v. Lett, 393 Mass. 141, 145 (1984).[13]

---

[13] The result we reach is consistent with the reasoning in Commonwealth v. Martin, 457 Mass. at 22-23. In Martin, a police officer unlawfully pat frisked the defendant, who pushed the officer's hands away and said, "You can't touch me." Id. at 16. The Supreme Judicial Court rejected the Commonwealth's argument that the defendant's act was a new, intervening crime dissipating the causal link between the officer's unlawful conduct and his subsequent discovery of a firearm. Id. at 22-23. Martin thus turns on the fact that the defendant's act "did not influence the decision to seize the defendant, and accordingly the acts cannot have dissipated the taint of the original unlawful seizure." Id. at 23. In the present case, on the other hand, the judge found that the defendant's act in response to the unlawful entry into the second room established probable cause for his arrest on a criminal charge that was not the subject of any earlier police investigation and was not affected by the unlawful police entry.

Moreover, even though the police lacked justification for opening the door leading into the second room, there is no evidence of flagrant misconduct or bad faith, especially considering that they were invited to enter the basement to assist in mitigating a genuine emergency. See Commonwealth v. Fredette, supra at 461-463; Commonwealth v. Johnson, 58 Mass. App. Ct. 12, 14-15 (2003).[14,15] In sum, the third factor of the analysis set forth in Brown v. Illinois, 422 U.S. at 603-604, which is especially significant because it is tied to the purpose underlying the exclusionary rule, does not favor suppression of the evidence. See United States v. Fazio, 914 F.2d 950, 958 (7th Cir. 1990).[16]

---

[14] Contrast Wong Sun v. United States, 371 U.S. at 482-484 (officer flagrantly violated Fourth Amendment by purposefully misrepresenting his mission and breaking into residence); Brown v. Illinois, 422 U.S. at 605 (unlawful arrest had "the appearance of having been calculated to cause surprise, fright, and confusion"); New York v. Harris, 495 U.S. 14, 25-26 (1990) (police knowingly and deliberately violated Fourth Amendment to acquire evidence not otherwise obtainable); United States v. Camacho, 661 F.3d 718, 729 (1st Cir. 2011) (officers "accosted" defendants in absence of reasonable suspicion with "substantial show of authority" in "flagrant violation" of Fourth Amendment).

[15] Although he admitted smelling marijuana, Officer Manning testified: "To be perfectly honest with you, it was the end of my shift, the last thing I wanted to do was get involved in marijuana. I was there for a water break. And I wanted to clear it up as quickly as I could." He also stated, "I wasn't looking for marijuana."

[16] This case is based on the attenuation of the taint doctrine that was applied by the United States Supreme Court in Brown v. Illinois, supra, and that has been followed by the

Conclusion.  Although Officer Lemieux's entry into the second room was unlawful, that illegality does not require the exclusion of evidence concerning the mason jar filled with raw marijuana, and all that followed from that observation.  The nexus between the unlawful entry and the evidence observed in plain view during the course of the subsequent lawful arrest was dissipated by an independent and intervening act of free will by the defendant.  See Commonwealth v. Borges, 395 Mass. at 795.

Order allowing motions to
suppress reversed.

---

Supreme Judicial Court.  See, e.g., Commonwealth v. Damiano, 444 Mass. at 454.  The critical facts that warrant application of the doctrine are an unlawful search that was not a pretext for the discovery of evidence nor a flagrant violation of the law, followed by an independent, intervening act committed by the defendant that established probable cause for his arrest during which the police discovered evidence of other crimes.  We do not rely on the United States Supreme Court's most recent expression of the attenuation of the taint doctrine in Utah v. Strieff, 136 S. Ct. 2056 (2016).