A District Court jury convicted the defendant of unlawful possession of a firearm and unlawful possession of a loaded firearm. The firearm in question was found in the pocket of a coat he was wearing during a patfrisk performed by a Worcester police officer. On appeal, the defendant challenges the denial of his motion to suppress the firearm.[2] Because we agree with the defendant that the police did not have justification to conduct the patfrisk, we reverse the defendant's convictions and order that the complaint be dismissed.
Background. The factual recitation that follows is drawn from the judge's findings, none of which the defendant has shown to be clearly erroneous. See Commonwealth v. Meas, 467 Mass. 434, 440 (2014) ("In reviewing a decision on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error but conduct an independent review of [the judge's] ultimate findings and conclusions of law" [quotations omitted] ).
On September 12, 2014, at approximately 12:40 A.M., Officer Peter Roberge, a Worcester police officer, was on routine traffic patrol in the Kelly Square area. "[T]here have been many robberies, stabbing[s] and shootings" in Kelly Square, and it "is considered a high crime area of the city." Officer Roberge spotted the defendant and another man walking slowly toward a gas station (where, according to the officer's testimony, he observed the defendant purchase something). The officer knew the defendant from an arrest the year before, and he had some reason to believe that the defendant had a warrant outstanding for his arrest. In fact, there was no outstanding warrant, something that Officer Roberge could have learned had someone run the defendant's name through the warrant management system.[3] In lieu of radioing the station for such assistance, Officer Roberge decided to stop the defendant to make inquiry of him. As the judge expressly found, "Officer Roberge admitted that the defendant was not doing anything unusual when he observed him walking, that he did not observe any furtive movements during that time, and that he had no reasonable suspicion that the defendant had committed any crime, but that he knew the defendant and wanted to inquire about the existence of the warrant."
Officer Roberge pulled his marked cruiser alongside the defendant while the defendant was crossing the street, and stopped him while he was standing on a traffic island. The officer told the defendant "he wanted to talk with him." At this point, Officer Roberge was joined by two other officers (whom he had radioed for backup) in a separate cruiser. Officer Roberge did not activate his cruiser's lights or siren (and there was no evidence that the other officers did do so either). The defendant and his companion meanwhile had been joined by a third person, so that there were three officers and three civilians.
Officer Roberge asked the defendant to remove his hands from his coat pockets, and the defendant complied by slowly withdrawing his hands, which he then kept by his side and near his pockets. The defendant also turned his body "so that he shielded the left side of his body from Officer Roberge."[4] Officer Roberge noticed that the defendant appeared nervous during this encounter and would not look him in the eye. "Believing that the defendant was in possession of a weapon," Officer Roberge ordered the defendant to place his hands on the roof of a cruiser and pat frisked him. During this, Officer Roberge discovered the loaded firearm in the defendant's coat pocket.
Discussion. For purposes of our analysis, we assume that the defendant was not seized when the police initiated their conversation with him, or even when the police ordered him to remove his hands from his pockets. See Commonwealth v. Fraser, 410 Mass. 541, 544 (1991). As the Commonwealth acknowledges, however, the defendant plainly was seized by the time Officer Roberge ordered the defendant to place his hands on the cruiser so that he could pat frisk him. The question, then, is whether at that point the police had "reasonable suspicion that [the defendant] ha[d] committed, [was] committing, or [was] about to commit a criminal offense and [was] armed and dangerous." See Commonwealth v. Narcisse, 457 Mass. 1, 9 (2010).
At the motion hearing (and on appeal) the Commonwealth sought to justify the patfrisk based only on the theory that Officer Roberge had gained reasonable suspicion from their interactions that day that the defendant was in unlawful possession of a firearm.[5] To support this theory, the Commonwealth relies principally on Commonwealth v. DePeiza, 449 Mass. 367 (2007), a case that the prosecutor characterized at the motion hearing as being "directly on point" and as involving facts "almost identical to the facts before us today." To be sure, there are some basic similarities between the facts here and those in DePeiza: both defendants were stopped in a high crime area, appeared nervous, and turned part of their bodies away from the police. Id. at 368-369. However, in DePeiza-- a case that the Supreme Judicial Court itself characterized as "a close one" -- there was significantly more evidence to support a reasonable belief that the defendant was unlawfully in possession of a firearm. Id. at 371. For example, the defendant in DePeiza had been seen walking with a stiff, " 'straight arm' gait," which an officer with training on the subject testified was characteristic of someone walking with a concealed firearm. Id. at 368. Further, the police in DePeiza specifically observed that a pocket on the side that the defendant was shielding from the police appeared to have been weighted down by a heavy object.[6] Id. at 368. In light of the significant difference in the quantity and quality of evidence between DePeiza and the case before us, the comparison between the cases is not helpful to the Commonwealth.
We conclude that the defendant's nervousness when stopped by the police in a high crime area, coupled with his turning his body slightly away from the police, does not support reasonable suspicion that the defendant was illegally in possession of a firearm.[7] The police here had a hunch that the defendant may have been concealing an unlicensed firearm, but "[a] mere 'hunch' is not enough" to establish reasonable suspicion. Commonwealth v. Silva, 366 Mass. 402, 406 (1974). The motion to suppress should have been allowed.
Finally, in the unusual circumstances where it is beyond dispute that the defendant could not be retried if the firearm is suppressed, we order not only that his convictions be reversed, but that the complaint be dismissed. See Commonwealth v. Gentile, 466 Mass. 817, 832 (2014) (case remanded for dismissal where judge erred in failing to suppress certain evidence and the Commonwealth necessarily could not retry the defendant without such evidence).
Conclusion. The judgments are reversed, the verdicts are set aside, and an order shall enter dismissing the complaint.
So ordered.
Judgments reversed, verdicts set aside.

The defendant additionally argues that the trial judge erred in denying his motion to dismiss the criminal complaint based on police failure to preserve an article of clothing in which the firearm had been wrapped. We need not reach that argument.

Three months earlier, the defendant had been the victim of a shooting. Officer Roberge was aware that there had been an arrest warrant pending for the defendant at that time, and he testified at the suppression hearing that the warrant was for "[a]ssault and battery and destruction of property." Further, although Officer Roberge had not checked the warrant management system the day of the stop to see whether the earlier warrant was still outstanding, he had not seen the defendant's name on the daily list of warrants issued, something he regularly checked. He also testified that he had not seen the defendant's name in any of the booking records, which indicated to him that the warrant was still active. In fact, the warrant in question had been cleared five days prior to the defendant's being stopped.

The judge's finding on this point is not clearly erroneous, and Officer Roberge himself referred to the defendant's actions as "shielding" the left side of his body. However, it bears noting that on cross-examination, Officer Roberge agreed with defense counsel's characterization that the defendant "turned his body slightly away," and "just turned a slight turn."

It appears uncontested that Officer Roberge had ample time at the scene to radio to have someone check the warrant management system to confirm whether the old arrest warrant remained outstanding. In any event, the Commonwealth does not argue, on the facts here, that Officer Roberge could seize and pat frisk the defendant based on a mistaken but good faith belief that there was an outstanding warrant. In fact, as the judge noted, citing Commonwealth v. Maingrette, 86 Mass. App. Ct. 691 (2014), the Commonwealth affirmatively forswore making such an argument.

In holding that the police officer had sufficient reasonable suspicion to pat frisk the defendant, the court noted that the "most significant[ ]" evidence was that the defendant's right pocket "appeared to hold a heavy object" and that the defendant was shielding that side of his body from the police. DePeiza, 449 Mass. at 371-372.

Even if the defendant's turning his body is seen as his not wanting the police to see something on that side of his body, it hardly follows that the thing he was trying to hide was an illegal firearm.