NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-578

COMMONWEALTH

vs.

ELAN E., a juvenile.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a bench trial in the Juvenile Court, the juvenile was adjudicated delinquent on the charge of carrying a firearm without a license in violation of G. L. c. 269, § 10 (a). On appeal, the juvenile contends that the motion judge erred in denying his motion to suppress and the trial judge erred in allowing inadmissible hearsay into evidence at trial. We affirm.

Background. For purposes of the juvenile's challenge to the order denying his motion to suppress, we recite the facts as found by the motion judge, "supplemented by additional undisputed facts where they do not detract from the judge's ultimate findings." Commonwealth v. Kaplan, 97 Mass. App. Ct.

540, 541 n.3 (2020), quoting Commonwealth v. Jessup, 471 Mass. 121, 127-128 (2015).  We reserve some facts for later discussion.

Around 1:45 A.M. on September 5, 2022, a State trooper initiated a stop of a GMC Terrain sport utility vehicle after he saw it engage in multiple traffic violations.  After the driver stopped the vehicle in a breakdown lane, the trooper approached it with his flashlight and saw two individuals crouched in the trunk.  One was the juvenile, who made eye contact with the trooper before putting his head down and sweatshirt hood up.  The trooper also saw bottles of alcohol in the vehicle. After the trooper requested the driver's license and vehicle registration, the driver produced his license but claimed that the vehicle was a rental and he did not have the registration.  The trooper asked for identification from all of the vehicle passengers, at which point the driver stated to him that all of them were minors and none had identification.

After calling for back-up and running a query on the driver's license, the trooper returned to the vehicle and asked the driver to exit.  After he observed a folding knife in the driver's waistband, he requested permission to perform a patfrisk, and the driver consented.  The trooper told the driver that he and a colleague were going to search the vehicle for alcoholic beverages and asked if anyone in the vehicle had a

2

weapon.  The driver initially did not answer the question, then stated that there might be another knife in the vehicle.

The troopers directed the passengers to exit the vehicle and conducted a patfrisk on each as they did so.  The two passengers in the trunk were searched last.  Once the juvenile was outside the vehicle, the trooper asked whether he had "anything on him," and the juvenile "mumbled an unintelligible response . . . and put his head down."  The trooper immediately began a patfrisk of the juvenile and felt a hard metallic object resembling a firearm.  The second trooper approached and placed the juvenile in handcuffs as the first trooper removed a firearm that was tucked into the juvenile's waistband.  The firearm had a magazine inserted, and there were sixteen rounds of ammunition in the magazine and one round in the chamber.

The juvenile was charged with carrying a firearm without a license, G. L. c. 269, § 10 (a); carrying a loaded firearm without a license, G. L. c. 269, § 10 (n); possession of a large capacity feeding device, G. L. c. 269, § 10 (m); and possession of ammunition without a firearm identification card, G. L. c. 269, § 10 (h) (1).  After the juvenile moved to suppress all items seized as a result of the exit order and patfrisk, including the firearm and ammunition, a judge (motion judge) held an evidentiary hearing, then denied the motion in a written memorandum of decision.  Following a bench trial, a second judge

3

(trial judge) adjudicated the juvenile delinquent on the charge of carrying a firearm without a license in violation of G. L. c. 269, § 10 (a), and not delinquent on the other charges.

Discussion. 1. Denial of motion to suppress. The juvenile contends that the motion judge erred in denying his motion to suppress because the trooper (1) unlawfully ordered him to exit the car, and (2) conducted a patfrisk absent reasonable suspicion that he was armed and dangerous. "In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of [the judge's] ultimate findings and conclusions of law.'" Commonwealth v. Scott, 440 Mass. 642, 646 (2004), quoting Commonwealth v. Jimenez, 438 Mass. 213, 218 (2002). We "leave to the [motion] judge the responsibility of determining the weight and credibility to be given . . . testimony presented at the motion hearing." Commonwealth v. Meneus, 476 Mass. 231, 234 (2017), quoting Commonwealth v. Wilson, 441 Mass. 390, 393 (2004).[1] However, we "make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found." Commonwealth v. Mercado, 422 Mass. 367, 369 (1996).

---

[1] Here, the motion judge found the trooper's testimony to be "truthful and accurate on all material points except where otherwise noted."

4

a.  <u>Exit order</u>.  "Our analysis begins with the validity of the exit order because there is no dispute that the initial stop of the . . . vehicle was valid."  Commonwealth v. Monell, 99 Mass. App. Ct. 487, 489 (2021).  See Commonwealth v. Santana, 420 Mass. 205, 207 (1995) ("Where the police have observed a traffic violation, they are warranted in stopping a vehicle" [citation omitted]).  An exit order is justified where the police "are warranted in the belief that the safety of the officers or others is threatened" or "have reasonable suspicion of criminal activity."  Commonwealth v. Torres-Pagan, 484 Mass. 34, 38 (2020).

"[I]t does not take much for a police officer to establish a reasonable basis to justify an exit order or search based on safety concerns."  Commonwealth v. Gonsalves, 429 Mass. 658, 664 (1999).  "The justification for an exit order does not depend on the presence of an 'immediate threat' at the precise moment of the order, but rather on the safety concerns raised by the entire circumstances of the encounter."  Commonwealth v. Stampley, 437 Mass. 323, 328 (2002).  "A police officer need point only to some fact or facts in the totality of the circumstances that would . . . warrant an objectively reasonable officer in securing the scene in a more effective manner."  Commonwealth v. Rosado, 84 Mass. App. Ct. 208, 212 (2013).

5

Here, the traffic stop occurred in the middle of the night, and the two troopers on the scene were outnumbered by the seven occupants of the vehicle. See Commonwealth v. Moses, 408 Mass. 136, 142 (1990). The driver carried a knife, which he did not initially disclose, and he eventually informed the troopers that there might be a second knife somewhere inside the vehicle. As a result, the troopers had reason to suspect that one or more of the passengers in the vehicle possessed or had access to a weapon. Because these facts caused "a heightened awareness of danger that would warrant an objectively reasonable police officer" to fear for his safety, Monell, 99 Mass. App. Ct. at 490, quoting Stampley, 437 Mass. at 326, the exit order was justified on this basis.

The order was also justified by reasonable suspicion. For police to "expand a threshold inquiry of a motorist" stopped for a traffic violation, they "must reasonably believe that there is further criminal conduct afoot, and that belief must be based on 'specific and articulable facts and the specific reasonable inferences which follow from such facts in light of the officer's experience.'" Commonwealth v. Feyenord, 445 Mass. 72, 77 (2005), cert. denied, 546 U.S. 1187 (2006), quoting Commonwealth v. King, 389 Mass. 233, 243 (1983). Here, the motion judge credited the trooper's testimony that he saw bottles containing liquor in the back passenger area, and we

6

defer to that credibility determination.  See Commonwealth v. Tremblay, 480 Mass. 645, 655 (2018).  The driver also told the trooper that all of the passengers were minors.  These facts gave rise to reasonable suspicion that that the passengers were minors in possession of alcohol, in violation of G. L. c. 138, § 34C.  Particularly when these facts are considered in light of the officers' reasonable safety concerns, the exit order was "proportional to the suspicion that prompted the intrusion." Commonwealth v. Bostock, 450 Mass. 616, 622 (2008).

b.  Patfrisk.  "In the context of a lawful motor vehicle stop, [a] patfrisk is permissible only where an officer has reasonable suspicion that the stopped individual may be armed and dangerous" (quotations and citation omitted).  Commonwealth v. Crowder, 495 Mass. 552, 566 (2025), cert. denied, U.S. Supreme Ct., No. 24-7498 (Oct. 6, 2025).  "To determine whether an officer indeed had the requisite reasonable suspicion to engage in a patfrisk, we ask whether a reasonably prudent [person] in the [officer's] position would be warranted in the belief that the safety of the police or that of other persons was in danger" (quotations and citation omitted).  Id.  That reasonable suspicion "must be based on specific, articulable facts and inferences reasonably drawn therefrom."  Id.  Even "[a]n innocent explanation for an individual's actions 'does not remove [those actions] from consideration in the reasonable

7

suspicion analysis.'"  Commonwealth v. Sweeting-Bailey, 488

Mass. 741, 744 (2021), cert. denied, 143 S. Ct. 135 (2022),

quoting Commonwealth v. DePeiza, 449 Mass. 367, 373 (2007).

Viewed as a whole, the facts here amounted to "the

requisite reasonable [suspicion]" (quotation and citation

omitted).  Commonwealth v. Johnson-Rivera, 104 Mass. App. Ct.

533, 539 (2024).  The trooper initially saw the juvenile

crouched in the trunk of the vehicle.  After the juvenile saw

the trooper, he lowered his head, put his sweatshirt hood up,

and attempted to avoid further eye contact.  Combined with

circumstances suggesting that the juvenile may have been armed,

these facts "support[ed] a reasonable suspicion that [the]

officer's safety may be compromised."  Commonwealth v. Brown, 75

Mass. App. Ct. 528, 534 (2009).  See Johnson-Rivera, supra at

538, quoting DePeiza, 449 Mass. at 372 ("Although nervous or

furtive movements do not supply reasonable suspicion when

considered in isolation, they are properly considered together

with other details to find reasonable suspicion").  Even though

the motion judge did not credit the trooper's testimony that the

juvenile adjusted his sweatshirt over a bulged area in his

waistband, it is undisputed that the driver told the trooper

that there might be a second knife in the vehicle.  Because the

troopers had reason to believe that there was a second knife,

but did not know where it was, it was reasonable to believe that

the juvenile might present a danger the officers.  See Crowder, 495 Mass. at 566; Commonwealth v. Guardado, 491 Mass. 666, 681, S.C., 493 Mass. 1 (2023), cert. denied, 144 S. Ct. 2683 (2024). This suspicion was heightened after the troopers frisked the other passengers without finding the knife.  See Guardado, supra ("upon failing to find the firearm elsewhere," officer "reasonably could have inferred that the firearm instead was located on the defendant's person").  Accordingly, the patfrisk of the juvenile was lawful.

2.  Proof of the juvenile's age.  Lastly, the juvenile contends that his conviction for unlawful possession of a firearm must be vacated because the trial judge relied on inadmissible hearsay evidence of his proof of his age.  Evidence of the juvenile's age was necessary to support the inference that, because he was under twenty-one at the time of the offense, he did not possess a valid license to carry.  See G. L. c. 140, § 131 (d).  Because the juvenile did not object to the challenged testimony at trial, "we review his claims to determine whether there was error, and, if so, whether the error created a substantial risk of a miscarriage of justice." Commonwealth v. Cintron, 103 Mass. App. Ct. 799, 804 (2024), quoting Commonwealth v. Diaz, 100 Mass. App. Ct. 588, 596 (2022).  "In reviewing for a substantial risk of a miscarriage of justice, we determine whether 'we have a serious doubt

9

whether the result . . . might have been different had the error not been made.'"  Commonwealth v. Barros, 494 Mass. 100, 113 (2024), quoting Commonwealth v. Azar, 435 Mass. 675, 687 (2002), S.C., 444 Mass. 72 (2005).

The juvenile challenges the admission of statements by his aunt that were captured on the trooper's body-worn camera video footage, which was admitted into evidence at trial without objection.  Even if those statements were inadmissible hearsay, however, "[t]he mistaken admission of hearsay evidence, if merely cumulative of another witness's testimony, does not constitute reversible error."  Commonwealth v. Dunn, 56 Mass. App. Ct. 89, 94 (2002), quoting Commonwealth v. O'Connor, 407 Mass. 663, 670 (1990).  Here, there was other evidence of the juvenile's age.  The same body-worn camera video footage showed that, after the juvenile was arrested, the trooper asked for his date of birth, and the juvenile answered.  This statement by the juvenile was not hearsay, but rather admissible as the statement of a party opponent.  See Commonwealth v. Mendes, 441 Mass. 459, 467 (2004); Mass. G. Evid. § 801(d)(2)(A) (2025).  The trooper also testified without objection as to the juvenile's date of birth and his belief that the juvenile was seventeen on the night of the offense.  Because there was sufficient evidence of the juvenile's age beyond the statements of his aunt, we

10

conclude that the admission of those statements did not create a substantial risk of a miscarriage of justice.

> Adjudication of delinquency affirmed.
>
> By the Court (Blake, C.J., Hand & Toone, JJ.[2]),

*Paul Little*

Clerk

Entered:  December 26, 2025.

---

[2] The panelists are listed in order of seniority.

11