NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-493

COMMONWEALTH

vs.

LEVI L., a juvenile.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The juvenile was arrested and charged with, as relevant here, carrying a firearm without a license, possession of ammunition without a firearms identification card, and possession of a large capacity firearm.  After moving unsuccessfully to suppress the evidence of the firearm and ammunition, the juvenile tendered a conditional guilty plea to those charges, see Mass. R. Crim. P. 12 (b) (6), as appearing in 482 Mass. 1501 (2019), and then appealed from the denial of his motion.  We affirm.

Background.  We briefly summarize the facts as the judge found them, supplementing them with other evidence that the

judge either explicitly or implicitly credited,[1] see Commonwealth v. Jones-Pannell, 472 Mass. 429, 436 (2015), and with our independent review of body-worn video footage that was part of the evidence at the suppression hearing. See Commonwealth v. Yusuf, 488 Mass. 379, 380-381 (2021). We reserve certain details for later discussion.

At approximately 8 P.M. on June 21, 2022, members of the Massachusetts State police and the Boston police department's "Youth Violence Strike Force" (officers) were on "directed patrol" near the Villa Victoria housing complex in Boston's South End. The directed patrol was a response to community concerns about increased "gang activity, drug activity, and firearm activity in the area of Shawmut Avenue." The officers were aware that approximately an hour earlier, other Boston police officers had dispersed a group of Lenox Street gang members who were loitering and drinking in another location near Shawmut Avenue. Accordingly, approximately six officers, split across two cars on directed patrol, went to the Villa Victoria housing complex, an area frequented by Lenox Street gang

---

[1] The judge expressly and without restriction credited the testimony of the Commonwealth's witnesses, Officers Ryan Fullam and Jose Sanchez.

associates and to which the officers had recently responded to calls about gangs, drugs, and gun activity.

When the officers, including Officer Ryan Fullam, arrived in the Villa Victoria parking lot, they saw a group of up to eight youths standing around a car on which there were cups and containers of alcohol. The police recognized the youths, knew that most of the people in the group were gang affiliated, and knew that some were not of legal drinking age. The officers spoke with the members of the group, informing them that they could be arrested for drinking in public.

Although the interaction between the police and the group was relatively calm, Fullam knew that one of the members of the group, whom we shall call Paul, had an open firearms charge. Additionally, Fullam knew that three firearms arrests had been made at Villa Victoria within the past two years and that two other firearms arrests had been made in the general area of Shawmut Avenue within approximately a month of June 21 -- one within one-quarter mile of Villa Victoria.

After the police talked with the group and Fullam pat frisked another member of the group without finding contraband, another officer drew Fullam's attention to a youth who appeared to be avoiding the officers' attention by remaining quiet, avoiding eye contact with the officers, and leaning down toward

3

a nearby car "with his head down and [his] hood over his head." It was not until this officer drew Fullam's attention to the youth and the distinctive Gucci sling bag he was wearing, which the police knew belonged to Paul, that Fullam recognized the individual to be the juvenile.

Fullam was familiar with the juvenile from the juvenile's prior police interactions and knew that he had previously been arrested for a firearms offense. Fullam had seen the juvenile before June 21, 2022, including an encounter on the street three days earlier; in those earlier interactions, the juvenile had been "confrontational, taunting, loud, obnoxious, [and] unpleasant," and had specifically drawn attention to his claim to be a gang member.

Based on the juvenile's uncharacteristic behavior, his possession of Paul's sling bag, and Fullam's awareness that the juvenile and Paul had each been previously charged with possession of a firearm, Fullam suspected that the juvenile had a firearm in the bag. Thus, based on concerns for his own safety and that of the other officers present, Fullam patted down the sling bag the juvenile wore and discovered a handgun inside.

Discussion. 1. Admission of Officer Jose Sanchez's testimony about the juvenile's prior firearms arrest. On the

4

first day of the motion hearing, defense counsel made an oral motion to limit or preclude Officer Jose Sanchez from testifying that he had been present in August 2021 when a firearm was found in the juvenile's possession.  Defense counsel argued that because evidence of that gun was later suppressed in a separate case stemming from that arrest, the exclusionary rule rendered Sanchez's testimony about it inadmissible at the trial in this case.  The judge did not agree and permitted Sanchez to testify.

We are not persuaded by the juvenile's argument on appeal that the judge's ruling constituted an abuse of discretion requiring reversal.  See Commonwealth v. Evelyn, 485 Mass. 691, 706 (2020) (abuse of discretion standard applies to judge's determination of whether to admit evidence).  The legality of the patfrisk turned on the existence of reasonable safety concerns, and it is therefore not clear to us that exclusion of Sanchez's testimony about the juvenile's prior possession of a firearm would have served the purpose of the exclusionary rule -- "to deter police misconduct and preserve judicial integrity by dissociating courts from unlawful conduct." Commonwealth v. Nelson, 460 Mass. 564, 570-571 (2011).  Even if we were to conclude that Sanchez's testimony should have been excluded, we discern no prejudice stemming from the admission of that testimony where the same information about the juvenile's

5

prior firearms arrest came in without objection through Fullam. See Commonwealth v. Berube, 105 Mass. App. Ct. 357, 363-364 (2025) (error in admission of testimony was nonprejudicial where testimony was "cumulative" of other evidence admitted without objection).

2. Lawfulness of patfrisk. Whether the patfrisk was legally justified presents a more difficult question. When we conduct our review of the judge's denial of the motion to suppress, we "accept the motion judge's findings of fact unless they are clearly erroneous and assess the correctness of the judge's legal conclusions de novo." Commonwealth v. Henley, 488 Mass. 95, 100 (2021), quoting Commonwealth v. Weidman, 485 Mass. 679, 683 (2020). In assessing whether an officer has reasonable suspicion to justify a patfrisk, we ask whether a reasonably prudent person in the officer's position would be warranted in believing that the defendant is armed and dangerous. See Commonwealth v. Sweeting-Bailey, 488 Mass. 741, 744 (2021), cert. denied, 143 S. Ct. 135 (2022); Commonwealth v. Torres-Pagan, 484 Mass. 34, 36-39 (2020). "The officer's reasonable suspicion must be based on specific, articulable facts and inferences reasonably drawn therefrom." Commonwealth v. Crowder, 495 Mass. 552, 566, cert. denied, 146 S. Ct. 169 (2025). Our inquiry is both objective and "highly fact-

specific."  Id.  Here, we conclude that the evidence met the required threshold to justify the patfrisk.

First, Fullam knew at the time of the patfrisk that the juvenile had previously been arrested for unlawful possession of a firearm.  "Knowledge that a suspect's criminal record includes weapons-related offenses may factor into the reasonable suspicion calculus" as to whether a suspect is armed and dangerous.  Commonwealth v. Garner, 490 Mass. 90, 92 (2022).  The police also knew that the juvenile claimed to be gang affiliated and that he was carrying a distinctive sling bag belonging to another gang member, Paul, who himself had a prior firearms arrest.[2]  See Sweeting-Bailey, 488 Mass. at 752 ("evidence of gang membership may be considered as a factor in the determination of reasonable suspicion").

Second, the judge found that the encounter between the juvenile and the police took place in a location "where the officers had recently responded to calls concerning gang activity, drug activity, and gun activity."  The encounter was also within one-quarter mile of a recent firearms arrest.  This

---

[2] The judge credited the prosecution's testimony about the sling bag but did not consider it because the judge concluded that "[t]he reasonable suspicion necessary to conduct a patfrisk was present before the bag was identified by the officer."  We are not bound by the judge's legal conclusion.  See, e.g., Henley, 488 Mass. at 100.

evidence bore on the existence of reasonable suspicion that the juvenile was armed.  See Sweeting-Bailey, 488 Mass. at 752-753 (judge's finding about previous firearm arrest "approximately one-half mile away" from location of stop contributed to reasonable suspicion analysis); Torres-Pagan, 484 Mass. at 41-42 (where evidence showed "direct connection" between specific location and activity being investigated, characterization of neighborhood as "high crime" area may be relevant factor when assessing reasonable suspicion of safety threat).[3]  We also consider the evidence that for most, if not all, of the encounter leading up to the patfrisk, the officers were outnumbered by the group of juveniles.  See Crowder, 495 Mass. at 568 (fact that trooper was "outnumbered four to one" during nighttime roadside stop was factor in reasonable suspicion calculus).

Third, Fullam described the marked difference between the juvenile's quiet, retiring behavior when Fullam encountered him

_____

[3] The judge did not use the term "high crime area" in his findings.  To the extent that we read the words the judge used as a finding that the patfrisk occurred in a high crime area, we are not persuaded that the finding was clearly erroneous.  See Commonwealth v. Karen K., 491 Mass. 165, 169 (2023) (defining clear error); Commonwealth v. DePeiza, 449 Mass. 367, 372 (2007) (finding no clear error in judge's determination that area patrolled based on recent increase in firearms violence was "high crime area").

on June 21 and the juvenile's brash and attention-seeking conduct -- including his claim to gang membership -- three days earlier, suggesting to Fullam that the juvenile was attempting to hide something from the police. Based on the juvenile's efforts to avoid police attention and to conceal not only his face but also the bag he was wearing across the front of his body, the police could reasonably have suspected that the juvenile was attempting to prevent Fullam and the other officers present from noticing the sling bag. See Sweeting-Bailey, 488 Mass. at 749-750 (officers' fact-based inference that individual was behaving uncharacteristically to divert officers' attention away from car was properly considered in determining whether police had reasonable suspicion of weapon inside).

While we agree with the juvenile that none of these factors considered in isolation would support reasonable suspicion that he was armed and dangerous, our task is to consider whether the totality of the circumstances, presented through the evidence the judge credited, justified the patfrisk. See Sweeting-Bailey, 488 Mass. at 745. Having done so, we are satisfied that the events that unfolded on June 21, 2022, gave rise to an objectively reasonable suspicion that the juvenile was "armed" -- that is, concealing a firearm in the sling bag he wore -- and "dangerous" because his possession of the firearm in

9

the bag was presumptively illegal, given the juvenile's age. See G. L. c. 140, § 131 (d) (iv), as amended by St. 2014, c. 284, § 48; Commonwealth v. Karen K., 491 Mass. 165, 179 (2023) (evidence that "juvenile did not legally possess the firearm that [officer] suspected her to be carrying . . . contributed significantly" to reasonable suspicion that juvenile was armed and dangerous, justifying patfrisk); Commonwealth v. DePeiza, 449 Mass. 367, 374 (2007) (officers' reasonable belief that juvenile was carrying "concealed, unlicensed firearm" provided reasonable suspicion that juvenile "was therefore armed and dangerous"); Commonwealth v. Johnson-Rivera, 104 Mass. App. Ct. 533, 536, 538 & n.5 (2024) (facts providing reasonable suspicion that juvenile was carrying firearm also gave rise to reasonable suspicion that juvenile was armed and dangerous). Accordingly, the patfrisk was lawful, and the juvenile's motion

to suppress the evidence obtained as a result of the frisk was properly denied.

Order denying motion to
 suppress affirmed.

By the Court (Massing, Hand &
 Allen, JJ.[4]),

Clerk

Entered:  March 5, 2026.

---

[4] The panelists are listed in order of seniority.